UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

DEREK MACK,

    Plaintiff,

v.

TROOPER MARK BESSNER,
TROOPER JEFFREY RUCINSKI,
and SERGEANT DANIEL
MARTIN, jointly and severally

    Defendants.

No. 2:19-cv-13234

HON. LAURIE MICHELSON

MAG. ELIZABETH STAFFORD

---

Solomon M. Radner (P73653)
Johnson Law, PLC
Attorneys for Plaintiff
535 Griswold St, Ste. 2632
Detroit, MI 48226
(313) 324-8300
sradner@venjohnsonlaw.com

John G. Fedynsky (P65232)
Adam R. de Bear (P80242)
Assistant Attorneys General
Attys for Defs Martin & Rucinski
Michigan Dep't of Att'y General
State Operations Division
P.O. Box 30754
Lansing, MI 48909
(517) 335-7573
fedynskyj@michigan.gov
debeara@michigan.gov

                            /

## DEFENDANTS' MOTION FOR LEAVE
## TO FILE SECOND MOTION FOR SUMMARY JUDGMENT

Defendants Jeffrey Rucinski and Daniel Martin, through counsel, and in accordance with E.D. Mich. LR 7.1(b)(2), move this Court to grant leave to file a second motion for summary judgment. Rucinski and Martin's second Rule 56 motion will be filed contemporaneously

with the instant motion for leave. Attached to this motion is a supporting brief that sets forth in more detail the facts and law upon which the motion is based.

Pursuant to E.D. Mich. LR 7.1(a), on August 3, 2021, the undersigned counsel certifies that, via email, he sought concurrence in the instant motion, but that opposing counsel has not granted concurrence. For this reason, it is necessary to present the instant motion.

>Dana Nessel
>Attorney General
>
>*/s/ Adam R. de Bear*
>Adam R. de Bear
>Assistant Attorney General
>Attorney for Rucinski and Martin
>State Operations Division
>PO Box 30754
>Lansing, MI 48909
>(517) 335-7573
>debeara@michigan.gov
>P80242

Dated: August 9, 2021

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

DEREK MACK,

    Plaintiff,

v.

TROOPER MARK BESSNER,
TROOPER JEFFREY RUCINSKI,
and SERGEANT DANIEL
MARTIN, jointly and severally

    Defendants.

No. 2:19-cv-13234

HON. LAURIE MICHELSON

MAG. ELIZABETH STAFFORD

---

| | |
|---|---|
| Solomon M. Radner (P73653)<br>Johnson Law, PLC<br>Attorneys for Plaintiff<br>535 Griswold St, Ste. 2632<br>Detroit, MI 48226<br>(313) 324-8300<br>sradner@venjohnsonlaw.com | John G. Fedynsky (P65232)<br>Adam R. de Bear (P80242)<br>Assistant Attorneys General<br>Attys for Defs Martin & Rucinski<br>Michigan Dep't of Att'y General<br>State Operations Division<br>P.O. Box 30754<br>Lansing, MI 48909<br>(517) 335-7573<br>fedynskyj@michigan.gov<br>debeara@michigan.gov |

/

**DEFENDANTS' BRIEF IN SUPPORT OF MOTION FOR LEAVE TO FILE SECOND MOTION FOR SUMMARY JUDGMENT**

## CONCISE STATEMENT OF ISSUE PRESENTED

1. Because qualified immunity must be decided at the earliest possible stage of the litigation, Defendants moved for summary judgment in response to Plaintiff Derek Mack's complaint and prior to the commencement of discovery. After the Court ruled on Defendants' first dispositive motion, Mack provided testimony regarding the remaining portions of his claims. However, the expanded factual record now blatantly contradicts Mack's remaining allegations and demonstrates the absence of a constitutional violation. Thus, because qualified immunity is effectively lost when a state official is forced to go to trial, a second summary judgment motion is appropriate under these circumstances. Should this Court grant Defendants leave to file a second dispositive motion?

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

ED Mich. LR 7.1(b)(2);
*Lexicon, Inc. v. Safeco Ins. Co.*, 436 F.3d 662 (6th Cir. 2006);
*Scott v. Harris*, 550 U.S. 372 (2007);
*Pearson v. Callahan*, 555 U.S. 223 (2009).

i

## FACTS AND PROCEDURAL HISTORY

In his complaint and arising out of his arrest by troopers of the Michigan State Police, Plaintiff Derek Mack alleged four causes of action against Defendants Jeffrey Rucinski, Daniel Martin, and Mark Bessner: (1) excessive force in violation of the Fourth Amendment; (2) abuse of process in violation of the Fourth Amendment against; (3) a failure to intervene in the excessive use of force; and (4) a supervisory liability claim against Martin. (ECF No. 1, PageID.1–12.) In response, Rucinski and Martin moved for summary judgment on the basis of qualified immunity and, citing *Scott v. Harris*, 550 U.S. 372 (2007), argued that Mack's complaint should be dismissed as it is blatantly contradicted by the video footage.[1] (ECF No. 7, PageID.37.)

While, at the time, the Court did make note of the "odd procedural posture" of this case, it ultimately granted the majority of Rucinski and Martin's Rule 56 motion and particularly with respect to any claim that

---

[1] The underlying facts of this case relevant to the majority of Mack's claims have been set forth in detail in Rucinski and Martin's brief in support of their motion for summary judgment. (ECF No. 7, PageID.32–35.) Accordingly, Rucinski and Martin adopt and incorporate by reference their previous statement of facts as if fully set forth herein. See Fed. R. Civ. P. 10(c).

1

they failed to intervene to prevent the alleged excessive force of Bessner. (ECF No. 13, PageID.142, 157.) As to the remaining portion of their motion, however, the Court ruled that Rucinski and Martin were not entitled to summary judgment on Mack's claim that "he was stripped down and photographed" after he was placed in handcuffs. (ECF No. 13, PageID.135.)

Regarding this portion of the Mack's claims, the Court did find that "[t]he videos . . . blatantly contradict Mack's claim that he stood basically naked for 'about five to ten minutes.'" (*Id.*, PageID.153.) However, because the Court found that Plaintiff, Rucinski, and Martin "are out of view of both cameras for about a minute" and because "a minute is long enough for the [Rucinski and Martin] to have pulled [Mack's] pants down and then take a picture[,]" it denied Rucinski and Martin's Rule 56 motion with respect to the minute or so in time that the parties were out of view of the cameras. (*Id.*, PageID.153–154.) And in ruling on Rucinski and Martin's motion, the Court, after noting that the motion was filed before any discovery had commenced, commented that it was not inclined to entertain a second motion for summary judgment. (*Id.*, PageID.142.)

2

For the reasons stated below, Defendants Rucinski and Martin seek the Court's leave to file a second motion for summary judgment.

## ARGUMENT

I. **Good cause exists for this Court to grant Rucinski and Martin leave to file a second motion for summary judgment.**

The federal rules do not limit a party to only one motion for summary judgment. To the contrary, the Sixth Circuit has explained on several occasions that "[d]istrict courts may in their discretion permit renewed or successive motions for summary judgment, *particularly when the moving party has expanded the factual record on which summary judgment is sought.*" *Lexicon, Inc. v. Safeco Ins. Co. of Am.*, 436 F.3d 662, 670 (6th Cir. 2006) (emphasis added) (quoting *Kovacevich v. Kent State Univ.*, 224 F.3d 806, 835 (6th Cir. 2000)). Further, by requiring leave to do so, this Court's local rules contemplate the ability to file a second Rule 56 motion. *See* ED Mich. LR 7.1(b)(2).

Here, there are two reasons which constitute good cause sufficient for this Court to grant Rucinski and Martin leave to file a second motion for summary judgment. First, the parties have substantially expanded the record since the Court ruled upon the first Rule 56

3

motion. And second, Supreme Court precedent require issues of qualified immunity to be resolved at the time they are raised and prior to the imposition of the burdens of suit (such as discovery or trial).

### A. The record has been significantly expanded in a manner that further supports Rucinski and Martin's entitlement to summary judgment.

Having conducted discovery, the factual record has indeed changed, and each named party has been deposed.[2] In Mack's deposition, he provided a more detailed accounting of how and when he claims he was stripped and photographed. However, there are at least three instances in which the video blatantly contradicts his testimony regarding the remaining portion of his claims.

*First*, Mack testified that the alleged stripping and photographing occurred while his cousin, Darrell Slater, the driver of the Dodge Journey, was handcuffed and sitting on the curb. (Ex. A, Pl's Dep, pp. 42–45, 51.) According to Mack, the Troopers had to get his cousin's

---

[2] Defendant Bessner, however, cited his rights under the Fifth Amendment and refused to testify as to the underlying facts. (Ex. E, Bessner Dep Tr, pp. 5, 12.) He has separately entered into a consent judgment with Mack to resolve all claims against Bessner. (ECF No. 27.)

4

attention, tell his cousin to look at his exposed genitals, and "flash[ ] the light on [his] private area[.]" (*Id.*, p. 44.) However, Rucinski's video shows Mack's cousin leaving Rucinski toward the curb *without* handcuffs less than ten seconds before Mack is on camera fully clothed in the back of Rucinski's patrol vehicle. (Rucinski Video, ECF No. 7-4, at 7:50–8:05.) Further, dashcam video from Troopers who responded after Mack was in Rucinski's patrol car show Mack's cousin on the curb still without any handcuffs.[3] (Ex. B, Tpr. Henry Video, 1:00–1:15.)

In short, despite Mack's confidence that his cousin was sitting down on the curb next to him in handcuffs when he was allegedly stripped and photographed (Ex. A, p. 45, 51), the video footage shows only ten seconds between the time when Mack's cousin walked to sit down on the curb and the time where Mack can be seen sitting inside of Rucinski's patrol vehicle, (ECF No. 7-4, at 7:50–8:05.) And importantly,

---

[3] It is also worth noting that while Mack did complain to Bessner in the back of Rucinski's vehicle that he was tased and pepper sprayed (see *id.*, at 13:10–13:20), he made no complaints about being stripped and photographed. In an attempt to account for this inconsistency, however, Mack testified that he did complain about being stripped outside when the audio in Rucinski's video went out, but that he made no complaints inside the vehicle "because [he] felt like [he] would never get the footage." (Ex. A, p. 79–80.)

5

the video does not show Mack's cousin in handcuffs when the additional Troopers arrive. (*Id.*; see also Ex. B at 1:00–1:15.) Simply put, Mack's testimony is contradicted on this material assertion by the video.

*Second*, both Mack and Rucinski's testimony, along with the video evidence, show that Rucinski was on camera throughout the entire period of time in which Mack has alleged to have been stripped and photographed. Specifically, Rucinski's camera shows him on screen and interacting with Mack's cousin for all but ten seconds while Mack is off screen. (ECF No. 7-4, at 6:30–7:50.) Nor is Rucinski ever in the immediate vicinity of Mack during this crucial timeframe. In fact, immediately prior to leaving view of the camera, Rucinski is seen walking toward the driver's side of his patrol vehicle and appears ten second later sitting in the driver's seat. (*Id.*, at 8:00–8:10.)

At his deposition, Rucinski testified during this ten-second period where he did not appear on his camera, he indeed walked to the driver's side of his vehicle, sat down in the driver's seat, and manually switched the camera to record the interior of the patrol vehicle. (Ex. C, Rucinski Dep Tr, p. 87–88.) Additionally, discovery confirmed that during the ten seconds where he is not seen on his own camera, Rucinski is

6

captured on Martin's camera. Specifically, Martin's camera shows Rucinski walk to the driver's side of his vehicle, open the door, and enter the vehicle. (ECF No. 7-5, at 5:30–5:45.) At his deposition, Rucinski testified that it was him on Martin's video entering the driver's side of his vehicle (Ex. C, p. 89–90), and Mack testified that he would have no reason to doubt such testimony from Rucinski, (Ex. A, p. 86–87.) A jury would have no reason to doubt that either and thus no basis as a matter of law to ever find that Rucinski violated Mack's constitutional rights.

In short, Rucinski is visible on camera throughout the entire time when Mack is not visible. And at no point in the video is Rucinski seen taking Mack's clothes off. This, by itself, constitutes good cause for Rucinski to be able to file a second motion for summary judgment.

*Third*, while Mack and Martin are indeed both not visible on the video at the same, Martin is in fact on camera during the time when Mack alleges he was stripped and photographed. In particular, Martin leaves the view of both his and Rucinski's camera as he and Bessner walk Mack toward the passenger side of the vehicle. (See ECF No. 7-4, 6:30–6:40; ECF No. 7-5, 4:10–4:25.) During this time, Martin testified

7

that he placed Mack in the back of Rucinski's patrol vehicle. (Ex. D, Martin Dep Tr, p. 69.)

The videos further show that while Martin left the view of Rucinski's camera for approximately one minute (see ECF No. 7-4, 6:30–7:40), he was only outside the view of his camera for about 40 seconds. (ECF 7-5, 4:20–5:10.) And at his deposition, Martin was able to positively identify himself re-entering Rucinski's camera at approximately the 7:37 mark and re-entering his own camera at approximately the 5:09 mark. (Ex. D, p. 68–69; ECF No. 7-4, 7:30–7:40; ECF No. 7-5, 5:05–5:15.) In short, Martin is only unaccounted for approximately forty seconds in his video. But during the time in which Martin is not visible on the video, Mack's cousin is standing without handcuffs and with Rucinski. (See ECF No. 7-4, 6:30–7:30.) Accordingly, this video materially contradicts Mack's testimony that the stripping and photographing occurred while his cousin was in handcuffs and sitting on the curb.[4]

---

[4] What is more, Mack went so far as to testify that "do[es not] have any reason" to doubt Martin's testimony that he "did[ not] take pictures . . . or pull [Plaintiff's] pants down." (Ex. A, p. 92.)

8

In the end, the three inconsistencies addressed above certainly constitute an expanded record from when the Court last ruled on Rucinski and Martin's motion for summary judgment.  Moreover, each material inconsistency demonstrates that Mack's testimony is blatantly contradicted by the video.  *Cf. Scott v. Harris*, 550 U.S. 372, 380 (2007) (holding that "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment").  For this reason, the Court should grant Defendants Rucinski and Martin leave to file a second motion for summary judgment.  Otherwise, as detailed below, the proper application of qualified immunity is lost, unfair burdens are imposed on these public officials, and judicial economy is not served.

    **B.**    **Supreme Court precedent requires issues of qualified immunity to be resolved in these circumstances prior to trial.**

The second reason good cause exists here is because Rucinski and Martin are entitled to qualified immunity.  Because the video footage blatantly contradicts Mack's allegations regarding being stripped and

9

photographed, Mack cannot establish that a constitutional violation occurred. And absent a constitutional violation, a state actor is entitled to qualified immunity. *See, e.g., Baynes v. Cleland*, 799 F.3d 600, 610 (6th Cir. 2015) (explaining that when deciding whether a government official is entitled to qualified immunity, courts first ask whether "the plaintiff [has] shown that a constitutional violation has occurred"); *Spears v. Ruth*, 589 F.3d 249, 256 (6th Cir. 2009) (finding that where "no constitutional violation occur[s], [the state official] is entitled to qualified immunity").

To this end, the Supreme Court has "repeatedly . . . stressed the importance of resolving immunity questions *at the earliest possible stage in litigation*." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)) (emphasis added). Here, Rucinski and Martin did just that. That is, they moved for summary judgment at the earliest possible stage in litigation because the video evidence blatantly contradicted Mack's claims. (See ECF No. 7, PageID.42) (quoting *Scott*, 550 U.S. at 380); see also *Toms v. Taft*, 338 F.3d 519, 524 (6th Cir. 2003) (finding that district courts have the discretion to "grant[ ] summary judgment on the basis of qualified

10

immunity before allowing discovery"). And while the Court did correctly observe that the Mack was out of view of both Rucinski and Martin's cameras for "about a minute", and further commented that "a minute is long enough for the troopers to have pulled [Plaintiff's] pants down and then take a picture[,]" (ECF No. 13, PageID.153), the expansion of the factual record addressed above in Part I.A. clearly discredits Mack's testimony as to when and how he was stripped and photographed.

On this record, a new law of the case can and should be decided, which excludes as a matter of law the theoretical, speculative possibility of a constitutional violation having happened as alleged. The purpose of discovery is to narrow the issues and identify what factual matters can be reasonably disputed and left for a jury to decide. Here, qualified immunity stands in the way of a jury having to resolve anything with respect to the unfounded claims against Rucinski and Martin.

It is also worth noting that after the Court's entry of the consent judgment against Bessner (see ECF No. 27, PageID.216–217), these demonstrably false claims are all that remain. And put simply, these claims lack sufficient record evidence to be submitted to a jury. *Cf.*

11

*Miller v. Sanilac Cty.*, 606 F.3d 240, 247 (6th Cir. 2010) (emphasizing that "[t]he issue of qualified immunity may be submitted to a jury *only if* 'the legal question of immunity is completely dependent upon which view of the [disputed] facts is accepted by the jury'") (emphasis added).

In the end, it is well-settled that "qualified immunity is 'an immunity from suit rather than a mere defense to liability[, and that] . . . it is effectively lost if a case is erroneously permitted to go to trial." *Pearson*, 555 U.S. at 231 (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). Thus, because requiring Rucinski and Martin to go to trial on the remaining portions of Mack's claims would effectively be a denial of qualified immunity, good cause exists for this court to grant leave to file a second motion for summary judgment. *See also Hoffman v. Tonnemacher*, 593 F.3d 908, 910 (9th Cir. 2010) (where the Ninth Circuit, "relying on Supreme Court guidance in the realm of qualified immunity, [found] that a district court may permit successive motions for summary judgment on qualified immunity").

12

## CONCLUSION AND RELIEF REQUESTED

For the reasons stated above, Defendants Rucinski and Martin request that this Court grant them leave to file a second motion for summary judgment.

Dated: August 9, 2021

Dana Nessel
Attorney General

*/s/ Adam R. de Bear*
Assistant Attorney General
Attorney for Rucinski and Martin
State Operations Division
P.O. Box 30754
Lansing, MI 48909
(517) 335-7573
P80242

13

## CERTIFICATE OF SERVICE (E-FILE)

I hereby certify that on August 9, 2021, I electronically filed the above document(s) with the Clerk of the Court using the ECF System, which will provide electronic copies to counsel of record.

>*/s/ Adam R. de Bear*
>Assistant Attorney General
>Attorney for Rucinski and Martin
>State Operations Division
>P.O. Box 30754
>Lansing, MI 48909
>(517) 335-7573
>debeara@michigan.gov
>P80242